Chief Judge Fuld.
Effective June 1, 1971, the State of New York enacted chapter 372 of the Laws of 1971. After sanctioning continued rent Qontrol by cities having a population of *333 a million or more, chapter 372 went on to prohibit the enactment of any local law controlling rents which contains provisions “ more stringent or restrictive ” than provisions “ presently in effect.”[1] The City of New York thereafter adopted Local Law No. 7 of 1972 (Administrative Code of City of New York, § Y51-5.0, subd. n) which, inter alia, extended exemptions from rent increases previously granted (by Local Law No. 31 of 1970) to eligible senior citizens for a further period of six months, that is, from January 1 to June 30,1972.
The plaintiff, a landlord, thereupon brought this action to declare Local Law No. 7 invalid and unconstitutional on the ground that it violated chapter 372. This claim was the sole assertion in the complaint and the only question argued at Special Term and in the Appellate Division. Unsuccessful in the courts below, the plaintiff filed an appeal to our court late last spring. While the appeal was pending, the city, on June 30, adopted Local Law No. 51 of 1972 pursuant to chapter 689 of the Laws of 1972. That chapter, which added section 467-b to the Beal Property Tax Law, expressly authorized the city to grant exemptions to senior citizens from rent increases if, at the same time, the city fully compensated the landlords for the losses occasioned by such exemptions.
In our view, Local Law No. 51 which, as indicated, was passed in purported compliance with chapter 689, replaced and superseded the earlier local law, Local Law No. 7, and thereby rendered academic and moot the only question presented by the tíomplaint and posed by this appeal, namely, whether the provisions of Local Law No. 7 are “ more stringent or restrictive ” than Local Law No. 31 of 1970. Since that issue is not one that is “ likely to recur ” (East Meadow Community Concerts Assn. v. Board of Educ., 18 N Y 2d 129,135), there is no reason or justification for our continuing to entertain the appeal. (Cf., e.g., Matter of Plumbing Assn. v. Thruway Auth., 5 N Y 2d 420, 422, n. 1; Matter of Rosenbluth v. Finkelstein, 300 N. Y. 402, 404.) It follows, therefore, that the order appealed from should be reversed, without costs, and the case remitted to the Supreme Court, New York County, with directions to dismiss the com *334 plaint upon the ground that the issue presented is moot. (See Town of Greenburgh v. Board of Supervisors of Westchester County, 23 N Y 2d 732; Wilmerding v. O’Dwyer, 297 N. Y. 664.)
The question which we are now asked to decide — and, as already stated, it was neither presented by the complaint nor argued in, or considered by, the courts below — concerns the constitutionality of Local Law No. 51, not the' validity of Local Law No. 7. However, the lengthy delay which has attended the city’s passage of amendments to Local Law No. 51 — in an effort to gain compliance with the State’s enabling act (L. 1972, ch. 689) — prompts us to remark the deleterious side effects which rent control, as administered by the city, has had on the maintenance of rental housing accommodations, and particularly on housing occupied by many of the elderly tenants affected by the exemption provisions involved in this case.[2] Piecemeal legislation of the sort reflected in this litigation, engendering as it does uncertainty and confusion, tends to exacerbate the situation.

, The law then “ in effect ” was New York City’s Local Law No. 31 of 1970 which, we note, was upheld as constitutional in Parrino v. Lindsay (29 N Y 2d 30).

. This has been extensively and effectively demonstrated by Professor George Sternlieb in his 1970 report, entitled “The Urban Housing Dilemma — The Dynamics of New York City’s Rent Controlled Housing,” which the city commissioned him to prepare. As he repeatedly pointed out in the cotirse of his report (e.g., pp. 50, 404, 513), “expectation” in the field of rental receipts is essential for the proper maintenance of such housing.