OPINION OF THE COURT
Arnold Guy Fraiman, J.
Motions Nos. 89 and 90 of October 21, 1982 are consolidated for disposition. Plaintiffs in this action for a declaratory judgment are landlords of buildings in the City of New York subject to rent control or the rent stabilization laws. Defendants are the City and State of New York and a number of tenants, in buildings owned by plaintiffs, who are senior citizens to whom rent increase exemption orders have been issued by the city under the provisions of the New York City Rent and Rehabilitation Law (Administrative Code of City of New York, § Y51-1.0 et seq.) or the Rent Stabilization Law (Administrative Code, § YY51-1.0 et *191 seq.). By Motion No. 89, defendants move to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 7) for failure to state a cause of action, and by Motion No. 90, plaintiffs move for summary judgment for the relief demanded in the complaint.
By their complaint plaintiffs seek a declaratory judgment that Local Law No. 51 of 1972 of the City of New York as amended by Local Law No. 19 of 1977 of the City of New York, and chapter 598 of the Laws of 1980, which superseded Local Law No. 51 of 1974 of the City of New York, are invalid on the grounds that: (1) they are violative of the so-called Urstadt Amendment (L 1971, ch 372); (2) they exceed the authority granted the city by section 467-b of the Real Property Tax Law; and (3) they cause an unconstitutional deprivation of property without due process in violation of the Fourteenth Amendment to the United States Constitution, and section 7 of article I of the New York State Constitution.
In 1970, the city enacted Local Law No. 30 which substantially revised the rent control laws. By its terms, a maximum base rent (MBR) ceiling was fixed for each rent-controlled apartment, which was calculated to provide a stated minimum return on the landlord’s investment. This was to be recalculated every two years to keep abreast of changes in operating costs. To the extent that the rent for any apartment was below the MBR, the collectible rent could be increased by no more than 714% per year. At the same time as the city enacted Local Law No. 30, it also enacted Local Law No. 31. In a preamble to the latter, the city council noted the existence of an acute housing shortage and the hardships to which older persons with limited income could be subjected by increased costs for shelter. By its terms, Local Law No. 31 exempted senior citizens whose total income did not exceed $4,500 and who paid more than one third of such income for rent, from the rent increases provided by Local Law No. 30. The exemption applied only to rent increases granted after August 1, 1970, and it expired on January 1, 1972.
Following the passage of Local Law No. 31, the State Legislature enacted the so-called Urstadt Amendment (L 1971, ch 372). This barred the city from enacting rent *192 controls “more stringent or restrictive” than provisions “presently in effect.” Thereafter, the city enacted Local Law No. 7 of 1972, which extended for a further period of six months the earlier exemption for senior citizens provided by Local Law No. 31 of 1970. This was promptly challenged as violative of chapter 372, but during the pendency of the litigation, the State enacted chapter 689 of the Laws of 1972, which added section 467-b to the Real Property Tax Law. Section 467-b expressly authorized the city to grant exemptions from rent increases to low income senior citizens if the affected landlords received reimbursement by way of tax abatements. Pursuant to chapter 689, the city adopted Local Law No. 51 of 1972, as amended by Local Law No. 19 of 1977, and Local Law No. 51 of 1974. The former applies to rent-controlled apartments and the latter to rent-stabilized buildings. Both contain essentially the same provisions, so far as are here relevant. Each provides for tax abatements for landlords who are deprived of rent increases because of exemptions granted to senior citizens in their buildings. Each contains the following provision: “Tax abatement pursuant to this section shall be in addition to any other tax abatement authorized by law, but shall not reduce the tax for any fiscal year below zero. In the event that the tax abatement certificate authorizes an amount of deduction in excess of the real estate installment, then the balance may be applied to any subsequent installment until exhausted. In such a case the owner shall submit with his real estate tax bill and remittance, a verified statement in such form as prescribed by the commissioner of finance setting forth the carry over amount and the amounts previously applied.”
Plaintiffs in this case are the owners of rent-controlled or rent-stabilized buildings containing tenants who are senior citizens eligible for and receiving the exemptions provided for in Local Law No. 51 of 1972, as amended by Local Law No. 19 of 1977, and chapter 598 of the Laws of 1980. In the case of each plaintiff, the rent increase exemptions he has been required to grant over the past two years have exceeded the total real estate taxes on the plaintiff’s building. As a result, despite the provision quoted above permitting the owner to carry forward to a subsequent *193 installment any abatement which is in excess of the real estate installment for which it is allowed, the total real estate tax offsets permitted plaintiffs each year are less than the total rent increase exemptions they were required to grant to senior citizens. Nor is it foreseeable that this loss can be recouped in future years. For example, plaintiff Brandt is the owner- of the building situated at 2-4 St. Nicholas Place in Manhattan. During the real estate tax year commencing July 1,1980 the premises were subject to a real estate tax of $6,824.88. During the calendar year encompassing that period the total senior citizen rent increase exemptions in the building were $14,413.20. During the following calendar year, Brandt’s total real estate taxes were $6,623 and the senior citizen rent increase exemptions amounted to $14,226.36. Thus, the total rent increase exemptions which Brandt was required to grant to senior citizens for those two years exceeded the total real estate tax abatements which could be satisfied by $15,191.68. Barring an unforeseeable change in the status of plaintiff’s tenants, this deficit will continue to grow annually and will never be recovered.
The city’s desire to ameliorate the condition of its elderly poor is highly commendable. Its subsidization of housing for senior citizens who otherwise could not afford adequate shelter is clearly an appropriate subject for legislation in furtherance of the public welfare. However, the cost of such a subsidy must be borne by all taxpayers. The burden is a public burden, and its cost must be spread among the public. In the instant case, plaintiff landlords are compelled to assume to a greater degree than other taxpayers the burden of subsidizing the rents of elderly tenants of restricted income, solely because they are the owners of the buildings in which the tenants reside. The imposition of such a burden deprives plaintiffs of property without due compensation and is unconstitutional. If the city were to enact legislation requiring all food stores to offer a 10% discount on food sold to the elderly poor, and the law provided for reimbursement by the city to the purveyors, the program would clearly be an appropriate subject of public welfare legislation, and since the costs would be borne by the taxpayers as a whole, no constitutional im *194 pediment would be presented. But could it even be suggested that if the food stores were required themselves to absorb all or any part of the cost of such a program, it could withstand constitutional scrutiny? The instant case presents an analogous situation. Landlords, “an invidiously selected class” (903 Park Ave. Corp. v City Rent Agency, 31 NY2d 330, 336 [Breitel, J., dissenting opn]), have been singled out by virtue of this legislation to assume the burden of partly subsidizing a city program which provides reduced rentals for elderly tenants of restricted income. While the court applauds the city’s efforts in this regard, it is not enough for it merely to enact legislation which provides rent exemptions for needy senior citizens. It must also assume out of its own coffers the full costs of such a program.
The specific issue here presented was considered by the New Jersey Supreme Court in Property Owners Assn. of North Bergen v Township of North Bergen (74 NJ 327). In that case the court declared a statute similar in objective to that under consideration here, unconstitutional. The court had before it an amendment to a rent-control ordinance adopted by the Township of North Bergen. The amendment froze the rents of senior citizens whose income did not exceed $5,000. Rental increases for other tenants were determined by percentages reflected in the Consumer Price Index, increases in property taxes, mortgage and maintenance need, and major capital improvements. Increases were limited to 15% in any one year. If such increases were not fully met by the allowable 15% rental increases, the amendment provided that the township would pay the landlord additional funds in the form of a rent subsidy of up to 10% of the rents paid by the senior citizen tenants. No provision was made to reimburse the landlord in the event he could justify an increase in excess of the recovery from the township.
In upholding a determination by the Trial Judge that the amendment caused an unconstitutional deprivation of property without due process, the Supreme Court held that under the amendment, to the extent a landlord was entitled to rents in excess of the 15% increase and the township’s 10% rental subsidy, “the landlord would be called *195 upon to subsidize the Senior Tenants to that extent. Under the terms of the ordinance, the landlord may not recoup any additional funds to which he is rightfully entitled. Imposition of that burden would deprive an owner of property without due compensation. Such rent control is confiscatory and unconstitutional.” (Property Owners Assn. of North Bergen v Township of North Bergen, supra, p 336.)
This court is mindful that the New York Court of Appeals in Parrino v Lindsay (29 NY2d 30) upheld the constitutionality of Local Law No. 31 of 1970, the predecessor to Local Law No. 51, and that under Local Law No. 31 the owners were required to absorb the full cost of rent exemptions to elderly tenants. However, the court believes that the determinative factor in that decision was the limited duration of the ordinance. In holding that Local Law No. 31 was a valid exercise of the police power, the court noted that the ordinance prevented increases only for the period between August 1, 1970 and January 1, 1972, a period of one year and five months. Although the court did not fully articulate the reasons for its decision, it is apparent that the short duration of the ordinance was a significant factor. Judge Breitel’s subsequent observation concerning Parrino in his dissenting opinion in 903 Park Ave. Corp. v City Rent Agency (supra, p 335), is worth noting: “I assume, but with newly-emphasized doubts, that this court was correct in sustaining the city’s initial legislation abating maximum rents otherwise applicable to housing accommodations rented to certain elderly tenants at the expense of their landlords for the period of a temporary emergency” (emphasis added). Chief Judge Fuld who authored the Parrino decision, himself raised a question in a footnote as to the validity of Local Law No. 31 in the event it was extended beyond December 31, 1971, and specifically declined to resolve that issue. (Parrino v Lindsay, supra, p 34, n 2.) In the instant case, the legislation under consideration is of unlimited duration. .
For all of the foregoing reasons, the court finds Local Law No. 51 of 1972, as amended by Local Law No. 19 of 1977, and chapter 598 of the Laws of 1980 unconstitutional to the extent that they do not fully reimburse landlords for the rent exemptions required therein. The court does so *196 with extreme reluctance because of the effect of its decision upon the elderly. However, the constitutional flaw in the legislation can be effectively cured by the appropriate legislative bodies if they act promptly, and the judgment to be entered herein is stayed for a period of 90 days to permit the enactment of appropriate corrective legislation. The motion to dismiss the complaint is denied and although issue has not been joined as to certain of the defendants, plaintiffs’ motion for summary judgment is granted pursuant to CPLR 3211 (subd [c]). (Shapiro v Prudential Ins. Co. of Amer., 81 AD2d 661; Monteferrante v New York City Fire Dept., 63 AD2d 576, affd 47 NY2d 737.)