**Barbara KRAEBEL, d/b/a Barklee Realty Company, Plaintiff–Appellant,**

v.

**NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, and New York City Department of Finance, Defendants–Appellees.**

No. 444, Docket 91–7665.

United States Court of Appeals, Second Circuit.

Argued Nov. 20, 1991.

Decided March 19, 1992.

Barbara Kraebel, pro se.

Timothy J. O'Shaughnessy, New York City (Victor A. Kovner, Corp. Counsel of the City of New York, Fay Leoussis, of counsel), for defendants-appellees.

Before: PRATT, MAHONEY and McLAUGHLIN, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Plaintiff-appellant Barbara Kraebel, d/b/a Barklee Realty Company, appeals *pro se* from a judgment of the United States District Court for the Southern District of New York, Mary Johnson Lowe, *Judge*, dismissing her complaint against the New York City Department of Housing Preservation and Development and the New York City Department of Finance (together, "the city"). Kraebel, who is the owner and landlord of a sixteen-unit residential apartment building, brought this action under 42 U.S.C. § 1983 claiming that the city's improper administration of two municipal programs applicable to landlords violated her rights under the fifth and fourteenth amendments of the constitution as well as the contract clause. She sought relief in the form of damages, injunctions, and attorney's fees. The district court dismissed some of her claims under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and some under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted.

## BACKGROUND

Barbara Kraebel participated in two housing programs administered by the City of New York.

## A. *The J51 Program*

The first is the "J51" program, which provides for property tax benefits to landlords who rehabilitate their residential buildings. N.Y.Real Prop.Tax Law § 489; N.Y.City Admin.Code § 11–243. The purpose of the program is to encourage landlords to improve their buildings by authorizing exemptions and abatements in property taxes, for certain enumerated projects, to offset any increases in the real property taxes on their properties that would otherwise result from the improvements. N.Y.Real Prop.Tax Law § 489(1)(a) & (2)(a). Under authority of N.Y.Real Prop.Tax Law § 489(4), the City of New York has determined that certain improvements to residential apartment buildings are worth encouraging, and to do so, it has provided significant public subsidies for private undertakings. *See* N.Y.City Admin.Code § 11–243. Landlords participate in the J51 program on a voluntary basis.

Relying on the incentives provided by the J51 program, Kraebel voluntarily made improvements to her apartment building. She now claims that the city has defaulted on the promises that induced her to spend large sums of money she could not otherwise afford. Specifically, in the summer of 1988, Kraebel submitted two applications for tax exemptions and abatements based on the improvements she had made. Kraebel alleges that these applications were subjected to repetitive reviews by numerous people, several of whom demanded further documentation that was not even required under the extensive J51 regulations. She claims that the city's conduct amounts to harassment that resulted in unreasonably delayed processing of her applications.

In February 1990, over a year and a half after her applications, the city finally approved benefits in the form of a tax exemption and tax abatement totalling $5,800 rather than the $8,441 she had requested in her June application, and $18,200 of the $36,494 she had sought in her August application. Although it rejected almost half of the total for which she had applied, the city did not provide adequate reasons. Kraebel claims that these actions constitute grossly negligent, prejudicial, and fraudulent administration of the J51 program and violate her rights to due process and equal protection under the fifth and fourteenth amendments to the United States Constitution.

Kraebel also claims, though for the first time on appeal, that the J51 statutes themselves, which authorize denial of tax exemptions on the property if a landlord fails to submit a "no harassment" affidavit, constitute a bill of attainder in violation of Article I, Section 10, Clause 1 of the constitution.

## B. *The SCRIE Program*

The second program is the Senior Citizens Rent Increase Exemption ("SCRIE") program, which exempts qualified senior citizens living in rent-controlled and rent-stabilized apartments from paying rent increases. Although many of the city's poor currently receive some housing aid through rent regulation, the state has determined that the elderly poor may receive an additional boost to ensure affordable housing. N.Y.Real Prop.Tax Law § 467–b.

Eligible senior citizens apply to the city for certificates that exempt them from paying rent increases. Rather than paying their full rent, senior citizens submit these certificates to their landlords along with the portion of the rent they must still pay. Section 467–b(6) authorizes reimbursement of landlords for the loss of the rent increases through dollar-for-dollar tax abatements. If the amount of the exempted rent increase exceeds a landlord's total real estate tax liability calculated on an annual basis, section 467–b(9) authorizes reimbursement of the balance of the contractual rent in the form of cash payments (commonly referred to as "excess SCRIE").

The City of New York has implemented this rent-exemption scheme by local law. N.Y.City Admin.Code §§ 26–405(m) *et seq.*, 26–406, and 26–509. Under this program, a senior citizen must apply to the city to obtain an order exempting him from the payment of a rent increase. This order sets forth the amount of the exemption, and also functions as a tax-abatement cer-

tificate for the landlord. If the total amount of the tax-abatement certificates given to the landlord exceeds the amount of the landlord's real estate tax liability, the landlord may elect either to apply the balance to later real estate taxes until the balance is exhausted or to obtain cash reimbursement. To get the excess SCRIE payment, a landlord must complete an application and provide adequate supporting documentation to allow the city to verify that the landlord is entitled to the cash.

Because she had four eligible elderly tenants residing in her building during the years 1988 through 1990, Kraebel participated in the SCRIE program, but obviously not on a voluntary basis. Since her tenants were exempted from paying otherwise authorized rent increases, she could not, by law, collect from them the full amounts of their rent. If she wanted reimbursement for the unpaid portions of the rents, she had no choice but to accept part of her rent in the form of tax abatements and then apply to receive any excess SCRIE to which she may have been entitled. Meanwhile, she lost the use of money to which she was entitled. Part of it she lost until she received her tax abatements. As for the SCRIE payments, she could apply only on an annual basis after the rental year and after it was determined that she was entitled to excess SCRIE. Even then, Kraebel claims, the extensive documentation and record-keeping requirements imposed by the city, along with the delays in processing her applications, unfairly deprived her of her reimbursement.

Specifically, she alleges that because of delays caused by the city, she could not obtain the forms necessary to apply for her 1988 excess SCRIE until May 1989, at which time she sought reimbursement for $986.90. For the same reasons, she could not apply for her 1989 excess SCRIE until May 1990, when she claimed reimbursement in the amount of $1,919.57. Furthermore, none of her claims for either year had been processed as of July 1990, and to this day, she has yet to receive reimbursement for her lost rents.

Although the city has partially processed Kraebel's claims for 1988 and 1989, and does not contest the amounts she is claiming, it has demanded of her further documentation, relating to whether she is entitled at all to reimbursement, and Kraebel, because of this suit, has not met the city's additional demands.

### C. *Issues*

Kraebel claims in general that the unnecessarily complex and burdensome procedures required of her to apply for reimbursements to which she is entitled, combined with the unreasonable delays caused by the inefficient administration of the J51 and SCRIE programs, result in a deprivation of her constitutional rights. More specifically, she argues that the city's interference with the sanctity of her lease agreements violates the contract clause; that the city's deplorable administration of the J51 and SCRIE programs violates her due process and equal protection rights; and that the SCRIE program as administered constitutes a taking of her property without just compensation.

The district court did not accept any of Kraebel's claims. It dismissed Kraebel's J51 claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, finding that the J51 program constituted a real estate tax scheme whose administration was insulated from federal court challenge under the principles of comity embodied in the Tax Injunction Act, 28 U.S.C. § 1341. The district court then dismissed her SCRIE claims pursuant to Fed.R.Civ.P. 12(b)(6), concluding that none of her constitutional claims was legally cognizable.

### DISCUSSION

### A. *J51 Program*

Kraebel challenges the city's administration of the J51 program as violative of her rights to equal protection and due process. However, because we agree that the district court properly dismissed Kraebel's J51 claims for lack of subject matter jurisdiction, we do not reach the merits of her constitutional claims.

### 1. Jurisdiction

The district court held that the principle of comity underlying the Tax Injunction Act, 28 U.S.C. § 1341, barred federal court jurisdiction over challenges to the administration of the J51 program.

The Tax Injunction Act bars federal injunctive challenges to state tax laws in federal courts. *See Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 105, 102 S.Ct. 177, 180, 70 L.Ed.2d 271 (1981). It provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Its underlying principle of comity also bars federal court consideration of a declaratory judgment action challenging the constitutionality of state tax laws. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297, 63 S.Ct. 1070, 1072, 87 L.Ed. 1407 (1943). More recently, in *Fair Assessment*, the Supreme Court held that the principle of comity extended as well to prohibit § 1983 claims for damages against the administration of a state tax scheme. *Fair Assessment*, 454 U.S. at 116, 102 S.Ct. at 186. These bars to federal court jurisdiction essentially recognize "the imperative need of a State to administer its own fiscal operations." *Id.* at 110, 102 S.Ct. at 183 (quotations and citations omitted).

Federal jurisdiction over challenges to state tax schemes is not precluded, however, if state remedies are inadequate. Just as there is no bar to injunctive actions if state remedies are not "plain, speedy and efficient", 28 U.S.C. § 1341, there is no bar to declaratory judgment or damage actions if state remedies are not "plain, adequate, and complete," *Fair Assessment*, 454 U.S. at 116, 102 S.Ct. at 186, and the effect of these two standards is exactly the same. *Id.* at 116 n. 8, 102 S.Ct. at 186 n. 8.

Thus, in order for the district court to have properly dismissed Kraebel's J51 claims, it must have concluded, first, that the J51 program constituted a tax assessment scheme subject to the Tax Injunction Act and the principle of comity, and second, that the state remedies available to Kraebel were adequate. We agree that both conclusions apply to this case.

■ We are not persuaded by Kraebel's argument that the J51 program is not a property tax scheme but is primarily a rent-subsidization program whose review in federal court would not interfere significantly with the state's taxing powers. The program provides landlords who rehabilitate their buildings with exemptions from and abatements to real property taxes. Part of the adjustment is carried out through reductions, or non-increases, in the tax assessments on the improved properties; part contemplates a direct credit against the property taxes otherwise payable. N.Y.Real Prop.Tax Law § 489. Clearly, then, the scheme focuses on the assessment and collection of real property taxes, with which federal courts may not interfere. The fact that the scheme may also have significant implications for housing policies does not remove it from the scope of state actions that are insulated from challenge in federal court.

■ We also reject Kraebel's second argument, that even if the J51 program is a tax scheme within the meaning of the Tax Injunction Act and the principle of comity, the state remedies available to her are not "adequate". In *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir.1989) (hereinafter, *"LILCO"*), we reviewed the remedies available under New York State procedures to challenge real property tax assessments claimed to be improper, and concluded that they were, indeed, "adequate". Kraebel has presented nothing to persuade us to reject our *LILCO* analysis and conclusion. In short, under the Tax Injunction Act and its underlying principle of comity, we are left with no choice but to affirm the district court's dismissal of Kraebel's J51 claims for lack of federal jurisdiction.

### 2. Bill of Attainder Claim

■ Kraebel raises for the first time on this appeal the claim that the city's requirement that all landlords seeking J51 benefits

file a "no harassment" affidavit constitutes a bill of attainder in violation of Article I, Section 10, Clause 1 of the constitution. She claims that when the city finally divulged its reason for not paying her J51 benefits, that reason was her alleged failure to file a "no harassment" affidavit, which declares that she had not harassed any of her tenants during the prior five years. Kraebel argues that such a requirement deems property owners guilty of harassment without proof and inflicts a penalty by withholding payments without a trial. She also complains that the city does not publish this requirement in the J51 regulations distributed to J51 applicants by the city.

While her argument is interesting, we cannot entertain it on this appeal. We have repeatedly held that if an argument has not been raised before the district court, we will not consider it, *Grace Towers Tenants Ass'n v. Grace Housing Development Fund Co.*, 538 F.2d 491, 495 (2d Cir.1976); *First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 635–36 (2d Cir. 1972), and we adhere to that holding here.

### B. *SCRIE Program*

■ Although the issue is not raised by the city, we note preliminarily that Kraebel's challenge to the SCRIE program is not barred from federal court review. While the SCRIE program does involve property tax payments, it does so only as a means of reimbursing a landlord for rents lost from their housing of SCRIE-eligible tenants. The SCRIE program has no impact on tax assessments or on the property tax scheme in general. In this lawsuit, Kraebel disputes only the procedures for and timing of the payments of her excess SCRIE reimbursements. Thus, there is no jurisdictional bar to Kraebel's SCRIE claims.

Looking to the merits, Kraebel makes several constitutional challenges to the city's administration of the SCRIE program. Her basic argument is that she is being denied the use of cash rental payments to which she is entitled. She claims that under the city's program, she is forced, first, to take tax credits rather than cash, and then, after the credits satisfy her tax obligation and she is entitled to cash, that she must suffer great administrative burdens to file her excess SCRIE claims, and finally, wait an unreasonable length of time to receive a reimbursement that does not reflect the time value of her money. The crux of Kraebel's complaint is that the administrative burdens and delays result in compulsory interest-free loans to the city, which unfairly deprive her of her constitutional rights.

We first address Kraebel's claims under the equal protection, contract, and taking clauses. Because we conclude that these claims have no merit, we do not discuss them in great detail. We then consider her claim under the due process clause, and because we find that the district court erred by dismissing that claim, we reverse and remand for further consideration.

### 1. Equal Protection Claim

■ Kraebel argues that the city selectively discriminates against her in violation of her equal protection rights. She claims to be a member of a class that is invidiously discriminated against—the class of private owners of small buildings with SCRIE-eligible tenants—and that they are being singled out to bear an arbitrary and disproportionate amount of the public burden of subsidizing elderly tenants.

The district court rejected this claim, stating that a rent regulation that is rationally related to a legitimate governmental purpose does not offend the equal protection clause merely because it affects landlords with eligible tenants more than it does landlords without such tenants. It held that the SCRIE scheme served a legitimate governmental purpose by trying to protect elderly low-income tenants. Although the court agreed that the program's reimbursement scheme placed an additional burden on landlords with SCRIE-eligible tenants, it held that this additional burden was rationally related to the program's purpose and to its need to reconcile the competing interests of tenants, landlords, and the public.

We agree. A statute that does not burden a suspect class or a fundamental interest will not be overturned " 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.' " *Pennell v. City of San Jose*, 485 U.S. 1, 14, 108 S.Ct. 849, 859, 99 L.Ed.2d 1 (1988) (quoting *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979)). Her claims to the contrary notwithstanding, Kraebel is not a member of a suspect class, nor is she asserting the type of fundamental interest that traditionally requires stricter scrutiny. Thus, the district court correctly applied the rational basis test to evaluate this equal protection claim. *See New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). Since the burden placed on landlords with eligible tenants is rationally related to the legitimate purpose of aiding low-income senior citizens, Kraebel's equal protection claim must fail. Although the delay in processing a landlord's reimbursement requests may seem to be an irrational and unnecessary burden in achieving the state's goals, the equal protection clause is not an appropriate means for analyzing the reasonableness of the delay.

2. Taking Claim

■ Kraebel also argues that the delays and documentation requirements in the administration of the SCRIE program constitute a taking of her property without just compensation in violation of the fifth amendment as applied to the states by the fourteenth. The heart of her argument is that the unnecessary delays in processing payment applications under the SCRIE program have the effect of illegally compelling her to make long-term interest-free loans to the city.

Relying on Supreme Court precedent that has consistently upheld rent regulation as a proper exercise of state and local government police powers, the district court dismissed this claim. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440, 102 S.Ct. 3164, 3178, 73 L.Ed.2d 868 (1982); *see also FCC v. Florida Power Corp.*, 480 U.S. 245, 252, 107 S.Ct. 1107, 1112, 94 L.Ed.2d 282 (1987). The district court held that in view of the legitimate exercise of police powers in this case, neither the documentation requirements nor the delays, were so unreasonable or inordinate as to amount to a confiscation of her property by the city. *Cf. Pennell*, 485 U.S. at 13, 108 S.Ct. at 858 (finding rent regulation scheme a "rational attempt to accommodate the conflicting interests of protecting tenants from burdensome rent increases while at the same time ensuring that landlords are guaranteed a fair return on their investment").

We agree. It is well established that "the Fifth Amendment's just compensation provision is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Pennell*, 485 U.S. at 9, 108 S.Ct. at 856 (citations, quotations, and brackets omitted); *see also Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). However, when the "interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good", it is more difficult to find a taking. *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Specifically, the Supreme Court has held that "[s]tates have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Loretto*, 458 U.S. at 440, 102 S.Ct. at 3178. *See also Florida Power Corp.*, 480 U.S. at 252, 107 S.Ct. at 1112 ("statutes regulating the economic relations of landlords and tenants are not *per se* takings"). Although Kraebel does suffer an economic injury, given the public interest served by the regulation in dispute and prior precedent that has regularly denied relief in similar circumstances, her taking claim must fail.

3. Contract Clause Claim

Kraebel next claims that her rights under the contract clause are impaired by the

operation of the SCRIE program. She argues that the city impermissibly interferes into the landlord-tenant relationship by forcing her to forego prompt payment of monthly rents to which she would be entitled absent the regulation.

The district court did not agree. Citing *Ritzie v. City University of New York*, 703 F.Supp. 271, 277 (S.D.N.Y.1989), it first held that the contract clause applied only to legislative acts and did not affect the actions of which Kraebel complained. The court then held that the facts alleged did not establish a substantial impairment of Kraebel's reasonable contractual expectations, because the housing industry had been the subject of substantial government involvement and regulation in the past, and Kraebel should not have been surprised by the SCRIE regulation.

We agree that the district court properly dismissed Kraebel's claim under the contract clause. Although the language of the contract clause appears to provide an unambiguous bar to state laws that impair the obligation of contract, it "does not operate to obliterate the police power of the States". *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241, 98 S.Ct. 2716, 2721, 57 L.Ed.2d 727 (1978). Thus, the contract clause "'does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public'". *Id.* (quoting *Manigault v. Springs*, 199 U.S. 473, 480, 26 S.Ct. 127, 130, 50 L.Ed. 274 (1905)).

■ In order for the contract clause to retain some meaning, however, it does impose some limits on the state, even in the exercise of legitimate police powers. *Id.* at 242, 98 S.Ct. at 2721. To determine whether a contract clause violation exists, the threshold question is "'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983) (quoting *Allied Structural Steel*, 438 U.S. at 244, 98 S.Ct. at 2722). As the severity of impairment increases, so too does the level of scrutiny to which the legislation is subjected. *Id.* As a measure of contractual expectations, one factor to be considered in determining the extent of the impairment is "whether the industry the complaining party has entered has been regulated in the past." *Id.* The next question is whether the state has "a significant and legitimate public purpose behind the regulation". *Id.* Finally, we must consider "whether the adjustment of the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." *Id.* at 412, 103 S.Ct. at 705 (citations and quotations omitted) (brackets in original).

■ Applying these factors here, we note that Kraebel is involved in a heavily-regulated industry—rental of residential property in New York City—and cannot claim surprise that her relationships with certain tenants are affected by governmental action. Furthermore, because the city ultimately reimburses her to the extent that its regulations deny her of her expected rent payments, the impairment cannot be described as being substantial or severe for purposes of the contract clause. Even assuming that the delays and burdens imposed on Kraebel's receipt of payments can be characterized as severe, there is a legitimate state purpose for the SCRIE program, and on balance, we conclude that Kraebel does not have a cognizable contract clause claim.

### 4. Due Process Claim

Finally, we address Kraebel's due process claim. Kraebel contends here that she has a constitutionally-protected property interest in the excess SCRIE payments due her and that the city is depriving her of this property interest without due process of law by imposing onerous requirements and excessive delays.

The district court dismissed Kraebel's due process claim without considering whether she had any property interest at stake; it simply concluded that even if she did, the remedies available under New York law, specifically Article 78 of New

York Civil Practice Law & Rules, were sufficient to satisfy her right to due process.

■ On this point, we disagree with the district court's analysis and conclusion. Initially, we address the district court's determination that because Kraebel could address her claims in a state Article 78 proceeding, she had all the process she was due. It is well-established that § 1983 generally allows plaintiffs with federal or constitutional claims the right to sue in federal court without first resorting to state judicial remedies, *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), or state administrative remedies, *Patsy v. Board of Regents*, 457 U.S. 496, 500–01, 102 S.Ct. 2557, 2559–60, 73 L.Ed.2d 172 (1982). Some confusion of these principles has resulted from the Supreme Court's decisions in *Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984), which held that when a plaintiff claims a due process violation based on the deprivation of a property interest by a random, unauthorized act, the "due process" required by the fourteenth amendment is satisfied by the availability at the state level of an adequate post-deprivation hearing. Thus, if the deprivation is caused by random, unauthorized state conduct and an adequate post-deprivation hearing is available, there is no denial of "due process", and therefore, no constitutional violation on which to base a § 1983 claim.

Kraebel's claim, however, does not come within the *Parratt/Hudson* rule, because it cannot be characterized as a challenge to a random, unauthorized act. Instead, she attacks established state procedures that cause the delays and burdens which deprive her of her property. As the Supreme Court has noted, where it is "the 'established state procedure' that destroys [plaintiff's] entitlement without according him proper procedural safeguards", the plaintiff is entitled to pursue a due process claim under § 1983. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102

S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) ("it is the state system itself that destroys a complainant's property interest, by operation of law"). Thus, the district court erred in concluding that the mere availability of redress in state court satisfied Kraebel's right to due process.

Since Kraebel's due process claim is not barred by the availability of a state remedy, we must analyze more closely the claim which she advances. There are two questions in the due process inquiry: first, "Was she deprived of a property interest?" And second, "If so, what process was due?"

"Property interests * * * are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law". *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). To have a property interest, a person must have "a legitimate claim of entitlement". *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

■ Here, New York law provides that landlords with senior-citizen tenants who are exempt from rent increases are to be reimbursed for their loss in rental income. N.Y.Real Prop.Tax Law § 467–b; N.Y.City Admin.Code §§ 26–405(m) *et seq.*, 26–406, and 26–509. The amount to be reimbursed is initially credited against the landlord's real estate tax liability, but once that tax liability is satisfied, the excess amount may, at the landlord's option, be paid directly to the landlord. Since Kraebel is entitled by state law to receive those excess amounts, we conclude that she has a property interest in the excess SCRIE payments which she claims.

We are not persuaded by the city's attempt to characterize Kraebel's asserted property interest as simply a claim for prompt payment, for which the city claims state law does not provide. Although the crux of her due process claim focuses on prompt payment, her property interest is defined by the right to payment in general. Of course, the state may require landlords

to comply with application procedures, and these may necessitate some time for processing, but the question of the timing of that processing and payment relate not to her property right, which is determined by state law, but to the adequacy of the process she is receiving, which is determined by federal law. *See Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1492 (" 'minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action' ") (quoting *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980) (brackets in original).

We thus ask: Has Kraebel received "due process"? Kraebel's claim is somewhat unusual because it is not couched, as are many of the reported cases, in terms of whether she is entitled to a hearing before the termination of a benefit she has been receiving or before denial of a benefit to which she is only arguably entitled. Even in those situations, however, the administrative process that determines eligibility for benefits must comport with due process. *Goldberg v. Kelly,* 397 U.S. 254, 260–66, 90 S.Ct. 1011, 1016–20, 25 L.Ed.2d 287 (1970). *See also Kelly v. Railroad Retirement Bd.,* 625 F.2d 486, 489–90 (3d Cir.1980) (holding that "due process must attach to the process of determining ineligibility, whether at the outset or after receipt of benefits"). Thus, even before the state makes a definitive decision as to entitlement, the road to that determination must be paved by due process.

■ Moreover, due process requires that eligibility for a variety of benefits be processed within a reasonable time. " [T]he possible length of wrongful deprivation * * * is an important factor in assessing the impact of official action on the private interests' ". *Mathews v. Eldridge,* 424 U.S. 319, 341, 96 S.Ct. 893, 906, 47 L.Ed.2d 18 (1976) (disability benefits) (quoting *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975)). In other words, "implicit in the conferral of

an entitlement is a further entitlement, to receive the entitlement within a reasonable time." *Schroeder v. City of Chicago,* 927 F.2d 957, 960 (7th Cir.1991) (Posner, J.) (disability benefits). Stated differently, delay in processing can become so unreasonable as to deny due process. *See, e.g., Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496 (continued employment); *Isaacs v. Bowen,* 865 F.2d 468, 477 (2d Cir.1989) (Medicare benefits); *Kelly,* 625 F.2d at 490 (disability benefits).

■ While we recognize that "[r]egrettably, delay is a natural concomitant of our administrative bureaucracy," *Isaacs,* 865 F.2d at 477, we are not prepared to conclude, without further evidence, that the delays here are reasonable. Although no bright-line rule exists for determining when a delay is so burdensome as to become unconstitutional, we think that there is at least a question of fact as to whether these delays were egregious and without any rational justification. Given the case-by-case approach required in due process cases, *see Eldridge,* 424 U.S. at 344, 96 S.Ct. at 907, the issue must be determined on a full evaluation of all the circumstances.

In evaluating Kraebel's due process claim on remand, the district court should keep in mind two very important considerations that make this case unusual. First, Kraebel is not merely seeking a hearing before she is being deprived of a benefit. Such an administrative hearing is not necessary, because according to her complaint, she is clearly and indisputably entitled by state law to the payments she seeks. She simply challenges the city's delay in paying her that which is hers.

Second, Kraebel's underlying property interest is of greater significance than is present in most other due process cases. Usually, the property interest claimed by the plaintiff is an entitlement to a benefit conferred by the state to promote certain public policy objectives, such as aiding the indigent or the disabled. In this case Kraebel's elderly tenants would be in that position. Kraebel herself, however, is not a supplicant seeking payments made avail-

able through a generous bureaucracy; she is a deprived property owner seeking reimbursement for being forced to shoulder the burden of long-deferred contractual payments under the SCRIE program, payments guaranteed to her by the government as a substitute for her right to receive payments directly from her elderly tenants.

One chapter in the history of the current SCRIE program underscores the constitutional significance of the excess SCRIE payments to landlords. In *Hirschel v. City of New York*, 117 Misc.2d 190, 460 N.Y.S.2d 438, 440 (Sup.Ct.1983), the state court struck down as unconstitutional the predecessor to the current SCRIE regulation, which limited a landlord's annual reimbursement to the amount of real property taxes on the rental property. There was no provision for excess SCRIE. Because for some landlords the total of the SCRIE program's rent reductions exceeded their tax liabilities, they could never recoup the full amount of their lost rental income. The court held that such a result would constitute a taking of plaintiff's property without just compensation. *Id.* Thus, to assure that landlords alone were not left to bear a disproportionate amount of the public burden, the city undertook the obligation to reimburse the landlords for the full amount that eligible tenants are exempted from paying, even in the form of cash payments, if necessary.

This sort of statutory and constitutional "right" to reimbursement must be weighed by the court in determining whether "due process" has been provided, because the "flexible" nature of the due process inquiry calls for "such procedural protections as the particular situation demands." *Eldridge*, 424 U.S. at 334, 96 S.Ct. at 902 (quotations omitted). "[T]he degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decision-making process." *Id.* at 341, 96 S.Ct. at 906. *Cf. Goldberg*, 397 U.S. at 264, 90 S.Ct. at 1018 (holding that benefits contingent on financial need required greater procedural protections).

Keeping in mind these two unusual aspects of Kraebel's due process claim, the district court on remand bearing in mind the deference appropriately accorded by courts to executive agencies regarding practicalities encountered by those agencies in administering legislative programs, *cf. Eldridge*, 424 U.S. at 347–48, 96 S.Ct. at 908–09, should engage in a factual inquiry to determine whether the burdens and delays imposed by the city were reasonable. It may consider a variety of additional factors in making this determination: the procedures actually used by the city to determine whether a landlord is entitled to the claimed excess SCRIE payments, the factors the city considers, the level of difficulty in making the determination, the amount of work required, the amount of decision-making discretion given to the employees, the need for and availability of administrative appellate review, the necessity for the paperwork and supporting documentation required, the amount of time required to process similar claims, and any other factors that may bear on whether "due process" is provided. If, given the steps reasonably necessary to restore to Kraebel the rents kept from her by this program, the court finds that the city has taken an unduly long time to process her applications, the court should not hesitate to award damages, which may include interest, calculated at a market rate, from the time that the delay became unreasonable.

## CONCLUSION

We reverse the dismissal of Kraebel's due process claim and remand for further consideration of the issue; we affirm the judgment of the district court in all other respects.